FILED
2008 Apr-29  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RHONDA WATKINS** ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER |
| ) | **5:07-CV-1665-UWC** |
| **MICHAEL J. ASTRUE**, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff Rhonda Watkins("Plaintiff") brings this action for a period of
disability and disability insurance benefits , as well as Social Security Income
benefits,  pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. §
405(g), seeking review of the final adverse decision of the Commissioner of the
Social Security Administration ("SSA").  This Court finds the Administrative Law
Judge ("ALJ") did not fully develop the record.  Therefore, for the reasons
elaborated herein, the Court will **REMAND** the decision denying benefits to the
ALR for further consideration.

1

## I.  Procedural History

Plaintiff filed an application for Social Security disability and SSI benefits on March 24, 2005, alleging disability beginning on January 1, 2002.  This application was denied by the State Agency and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 19, 2005.   The hearing was held on November 27, 2005 and the ALJ denied benefits on December 19, 2005.  The Appeals Council declined review by form denial on July 14, 2007. Having timely pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial review in federal district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.  Factual Background

At the time of the hearing, Plaintiff testified that she was thirty years old and had a high school education.  She has a nine year work history beginning in 1994.  The vocational expert classified the plaintiff's past relevant work experience as a hand packager, production assembler, grinder, and drill press operator as unskilled to semiskilled and ranging in exertional levels from light to medium.

Plaintiff has not worked since February 19, 2005, which was the date to

which she amended her onset of disability at the hearing held on November 27, 2005.  (R. 20.)   Plaintiff has a history of mental health treatment for a generalized anxiety disorder, panic attacks, suicidal ideation, bipolar disorder and major depression.  (R. 20.)  As of November 1, 2006, she was prescribed to the following psychotropic medications by Dr. Andrew Jeffery: Lamictal (for depression), Lexapro (for depression), Seroquel (for anxiety), and Alprazolam (for panic attacks).

**A**.  **Treatment History**

The extent of Plaintiff's mental health treatment history, or rather a certain lack thereof on the record, is precisely the issue for the Court to consider in the above styled action.  However, a general overview of the available medical evidence of record provides insight into Plaintiff's condition.

On December 9, 1998, Plaintiff was admitted under a court order to the Huntsville Hospital System and discharged to the Huntsville Madison Mental Health Center on December 11, 1998.  During this visit, Dr. Trevor Lindsay noted that plaintiff was admitted after hitting her husband over the head with a rocking chair and had reported taking large doses of Ex-Lax in an effort to lose weight, having racing thoughts, and difficulty sleeping.  He diagnosed her with depression and racing thoughts and ordered involuntary admission to the CSU Unit hospital

service rotation.  (R. 95.)

Between December 3, 1998 and October 24, 2000, Plaintiff was treated at the Ardmore Family Medical Clinic over thirty times for symptoms relating to anxiety, sinusitis, back pain, stomach, problems, and thyroid issues.  For example, on December 12, 1999, Plaintiff presented to the Ardmore Family Medical Clinic complaining of chest pains that did not go away even after taking Ativan (for anxiety). (R. 90-142.)

On October 16, 2003, she was admitted to Athens-Limestone Hospital for suction dilatation and curettage after an incomplete abortion.  (R. 144.)  Dr. Oliver Carlota performed the surgery after Plaintiff complaining of heavy bleeding and cramping. (R. 144.)

On March 9, 2004, Plaintiff was admitted to Decatur General West for suicide evaluation after having ideations triggered by financial concerns and loss of custody of her daughter.  Plaintiff had cut her wrists on the prior weekend and reported having auditory hallucinations of her name being called late at night. Upon discharge, Dr. Nikki Brannon diagnosed her with Axis I Bipolar affective disorder, Type 2, and panic disorder without agoraphobia.  Plaintiff was prescribed Paxil (for depression), Xanax (for anxiety), Lamictal (for depression), and Seroquel (for depression).  (R. 152.)

4

On June 8, 2005, Plaintiff presented to Dr. John Haney for a disability determination.  Dr. Haney noted that her average day consisted of taking care of her mother's pets, drawing, working with flowers, and doing housework.  At this appointment, Plaintiff reported auditory hallucinations, depression, manic episodes, sleeplessness, and three separate suicide attempts. (R. 169.)  He noted that all of patient's statements were regarded as truthful.  Dr. Haney determined that she will continue to require psychiatric treatment for her problems and noted that her ability to function in most jobs appeared moderately impaired.  He diagnosed her with Bipolar Disorder, Panic Disorder with agoraphobia, Personality Disorder, and Borderline intellectual Functioning. (R. 170.)

On May 10, 2005, Plaintiff presented to the Mental Health Center of North Central Alabama and complained of severe insomnia, sleeping no more than one or two hours per night.  She noted that she had been unable to afford the co-pay for her Clonazepam for at least the past two months.   Dr. Jeffrey reiterated her diagnoses of Bipolar Disorder and Panic Disorder and continued her on Lamictal, Seroquel, Lexapro, and Remeron.  (R. 206.)

On August 30, 2005, Plaintiff presented to the Mental Health Center of North Central Alabama with complaints of depression and suffering from frequent panic episodes.  Dr. Jeffrey noted that he had previously prescribed Xanax to the

5

patient but, after she admitted drinking alcohol, he discontinued it.  Because plaintiff reported being 100% abstinent from alcohol, he decided to give her another chance with benzodiazepine.

On November 3, 2005, Plaintiff presented to the Mental Health Center of North Central Alabama with complaints of depression.  She also noted that she lacks the money to continue paying for her medications, which she described as helping her mood.  (R. 193.)

On January 10, 2006, Plaintiff presented to the Mental Health Center complaining that she was still hearing voices.  One night in particular, she had heard voices calling to her from outside.  When plaintiff went outside to find the source of the voices, she climbed a fence, fell down, and suffered a number of lacerations on her arms which required stitches.  The provider, whose name is illegible from the records, reinforced to her that she needed to remain compliant with her medications. (R. 192.)

**B.  ALJ's Decision.**

The ALJ rendered an adverse decision on Plaintiff's claim on December 18, 2006.  To be sure, the ALJ made findings regarding plaintiff's mental health impairments.  He found that the evidence indicates the claimant has a history of mental health treatment for a severe combination of impairments, including

generalized anxiety disorder, stimulant drug abuse, a personality disorder not otherwise specified, and major depression. (R. 20.) However, the ALJ found these impairments were not disabling.

Specifically, the ALJ found that plaintiff was medically noncompliant with her medication regimen and that her subjective allegations concerning her impairments were not entirely credible. (R. 22.) Indeed he stated that there is no objective medical evidence confirming the severity of the alleged symptoms arising from her conditions . . . ." (R. 23.) He also found that the medical evidence of record does not contain a detailed description of the plaintiff's anxiety or panic episodes.

Thus, the ALJ found that, absent medical noncompliance, the record does not show a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities. (R. 22.) Therefore, he found that the plaintiff had no exertional limitations and, based upon the testimony of a vocational expert he concluded that Plaintiff was capable of performing her past work as a productions assembler and hand packager. (R. 25.) He concluded that she can "understand, remember and carry out short and simple instructions/tasks, but not those more detailed and complex." (R. 22.)

7

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  In contrast, the Commissioner's legal conclusions are more closely scrutinized.  "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult

disability claims.  20 C.F.R. § 404.1520 (1983).  The first consideration is whether the claimant is working.  If the claimant is working, she is not disabled.  If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment.  If the claimant does not suffer from a severe impairment, she is not disabled.  If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1520(a).  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Moreover, Social Security proceedings are inquisitorial rather than adversarial; and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000).  Indeed, the ALJ has a basic duty to fully develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981)

### IV.  Analysis

Although the ALJ provided an explanation of Plaintiff's impairment and outlined the reasons why it did not rise to the level of disability, this Court must remand the Commissioner's denial of Plaintiff's benefits.  The ALJ failed to explain his decision to include some portions of Plaintiff's treatment history in the record and exclude other portions.  Specifically, the ALJ failed to include in the record, *inter alia*,  Plaintiff's mental health clinic treating records  from August 2003 to September 2004 from the Mental Health Center of North Central Alabama, which included a medical source opinion from her treating psychiatrist Dr. Jeffrey (Pl.'s Br. at 5, citing Ex. 7-8F, and 12-13F in the prior claim).  Clearly, the ALJ failed to fully develop the record on this issue.

Accordingly, this Court need not reach whether the medical evidence of record actually entitles Plaintiff to benefits because it agrees with the Commissioner that a "reviewing court may not reweigh the evidence."  *See Martin*

10

*v. Sullivan*, 894 F.2d 1520, 1529 (11 th Cir. 1990).  However, it is under a continuing duty to ensure that the ALJ fully and fairly developed the record.

In the case *sub judice*, it is inconclusive at best as to whether this is so. Foremost, the ALJ clearly stated in the hearing that he would enter the medical source opinion of plaintiff's treating psychiatrist, Dr. Jeffrey, on the record as Exhibit 13F. ( R. 239-245.)  The ALJ failed to do so.  For this reason alone, the Court is unable to adequately evaluate his findings primarily because the ALJ failed to even mention it in his opinion; therefore, it is unclear to the Court whether the omission was intentional or whether it was an administrative oversight.

In his brief, the Commissioner argues that the omission of these records is essentially not important because these treatment records (1) were from a date prior to her amended onset date and (2) were part of a previously adjudicated decision.  (Def.'s Br. at 5-6.)  The Court disagrees.  First, if it were not proper for the ALJ to consider these records, then why did he assure Plaintiff's counsel in the hearing that he would include them in the record?  (*See* R. at 245.)

Moreover, the ALJ inexplicably discussed records that predated Plaintiff's amended onset date, specifically her 1998 and 2004 hospitalizations. (*See* R. 21, 24).  These medical records are included in the record before the Court.  This

11

utterly contradicts the Commissioner's argument that the ALJ properly limited his assessment of Plaintiff's claim to the time period related to her current applications. (Def.'s Br. at 6.)

Second, the conversation between the Plaintiff's attorney and the ALJ during the hearing underscores a general lack of clarity on both men's part as to what records should be included in this case. (See R. 209-213, 240-45.) This uncertainty apparently manifested itself into the current dispute.

The Court is not in the position to determine the misunderstanding *vel non* between the Plaintiff's counsel and the ALJ. However, in light of the ALJ's statement that Plaintiff "does not have a history of chronic mental illness," (R. 23) it seems highly relevant that a source opinion from her treating psychiatrist was omitted from the current record.

The Court acknowledges that a later request to this treating psychiatrist for an evaluation was denied by Dr. Jeffrey on November 9, 2006 because Plaintiff had not seen Dr. Jeffrey in so long. (R. 190). This fact, while important, does not obviate the need to at least "explain the selective admission of the exhibits." (Pl.'s Br. at 5.)

In addition to these highly relevant records, the ALJ did not include treating mental health records from the prior file (Pl.'s Br. at 5) or a Consultative

evaluation by Dr. Rogers dated Jan. 22, 2003.   As noted by the Plaintiff in her brief, the ALJ obviously considered this report, even though he failed to include it in the record, because he mistakenly attributed the consultative Evaluation performed by Dr. Haney on June 8, 2005 (Ex. B8F) to Dr. Rogers.  (Pl.'s Br. at 5.)

More likely than not, these matters have some relevance to Plaintiff's subjective complaints of anxiety and panic attacks, as well as to the longevity of her history of anxiety related disorders.

### V.  CONCLUSION

Therefore, by separate order, the decision denying benefits will be reversed and remanded for a reconsideration of the pertinent medical records to be included in the record, including but not limited to Plaintiff's mental health clinic treatment records  from August 2003 to September 2004 from the Mental Health Center of North Central Alabama, which included a medical source opinion from her treating psychiatrist, Dr. Jeffrey.

Done the 29th day of April, 2008.

U.W. Clemon
United States District Judge

13